**E-filed 3/27/09**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>ALISAL WATER CORPORATION, et al.,<br><br>                Defendants. | Case Number C 97-20099 JF (HRL)<br><br>ORDER[1] (1) GRANTING THE RECEIVER'S APPLICATION FOR AUTHORITY TO RETAIN CERTAIN FUNDS TO PAY MONTHLY OPERATION AND MAINTENANCE EXPENSES, INSURANCE, AND WELL REMOVAL COSTS FOR THE SAN JERARDO WATER SYSTEM; (2) DIRECTING PAYMENT OF THE RECEIVER'S EXPENSES AND COSTS ITEMIZED IN THE RECEIVER'S STATUS REPORTS FOR THE PERIODS 11/1/07 - 4/30/08 AND 11/1/06 - 10/31/07; AND (3) DENYING AS MOOT THE RECEIVER'S EX PARTE APPLICATION FOR AN ADDITIONAL $5,000 TO PAY OPERATING AND MAINTENANCE EXPENSES FOR THE SAN JERARDO WATER SYSTEM<br><br>[re: document nos. 826, 842, 879] |

---

[1] This disposition is not designated for publication in the official reports.

Case No. C 97-20099 JF (HRL)
ORDER (1) GRANTING THE RECEIVER'S APPLICATION TO RETAIN CERTAIN FUNDS ETC.
(JFLC2)

# I. OVERVIEW

Pending before the Court are:

(1) the Receiver's Ex Parte Application for Authority to Retain Certain Funds to Pay Monthly Operation and Maintenance Expenses, Insurance, and Well Removal Costs for the San Jerardo Water System [document no. 826];

(2) the Receiver's Status Report for the period November 1, 2007 through April 30, 2008 [document no. 836] and the Receiver's Ex Parte Application For Order Authorizing Compensation for that period [document no. 842];

(3) the Receiver's Status Reports for the periods spanning November 1, 2006 through October 31, 2007 [see document no. 792 for summary][2]; and

(4) the Receiver's Ex Parte Application For Order Authorizing Receiver To Retain An Additional $5,000 From The Sale Proceeds To Pay Operating And Maintenance Expenses Of The San Jerardo Water System [document no. 879].

In considering these matters, the Court has reviewed all of the briefing and evidence submitted by the Receiver, Defendants, and the County of Monterey (which the Court has designated as *amicus curiae*).[3] The Court has taken a significant amount of time to resolve these issues, and thanks the parties, the Receiver, and the County for their patience.

Once again the Court finds itself in the position of trying to address the financial needs of a water system in an advanced state of deterioration. The San Jerardo Water System, which is the last system remaining in the receivership, is barely functional. The system has approximately sixty connections that generate revenues of approximately $1,700 per month. Richardson Decl. ¶

---

[2] The Court previously approved payment of 80% of the Receiver's claimed expenses for these periods, but deferred consideration of the remaining 20% of these expenses. *See* Order of 12/20/07 [document no. 792]; Amended Order of 12/21/07 [document no. 795].

[3] Defendants initially objected to any filings by the County in this matter, as the County is not a party. At the hearing on May 29, 2008, Defendants acquiesced to the County's filing of documents in this matter as *amicus curiae*. Hrg. Trans. at 43-44 [document no. 843].

4 [document 826-3]. Because operational and maintenance expenses total significantly more than these revenues, the system is operating at a substantial deficit. The routine operational costs of running the San Jerardo Water System are approximately $3,000 per month. *Id*. ¶ 11. Moreover, immediate remediation work is required that will cost approximately $25,000. Motion p. 6 [document 826]. Defendants apparently have eliminated San Jerardo from Alisal's blanket insurance policy, and obtaining a replacement policy will cost approximately $5,000 per year. Richardson Decl. ¶ 14 and Exh. F [document 826-3]. An abandoned well must be destroyed, which will cost $8,000. *Id*. Exhs. H, I.

In addition to these operational and maintenance expenses, there are expenses associated with the interim filtration system that has been installed to keep the system running until an entirely new system can be installed in the fall of this year. The County advanced the money for the installation and operation of the interim filtration system, and has recovered $368,940.78 from the Receiver out of the proceeds from the sale of the systems. *See* Order Resolving Pending Issues Re Receivership filed 3/4/08 [document no. 824]. The County is accruing additional costs relating to the interim filtration system at a rate of approximately $13,000 per month, Muniz Decl. ¶ 11 [document no. 847]; Kitaji Decl. ¶ 15 [document no. 848], and anticipates that the total additional interim filtration system costs for which it will seek reimbursement will be approximately $350,000, County's Resp. at 6 [document no. 831]; Perry Decl. ¶ 12 (document no. 832]; Suppl. Perry Decl. ¶ 12 [document no. 837].

It appears that the new water system, which hopefully will be operational by October 2009, will be funded wholly or almost wholly by grants. Suppl. Kitaji Decl. ¶ 18 [document no. 869]. The County has applied for and obtained approximately $3.7 million in grant funding toward the new system. *Id*. However, these funds are not yet available, and they are earmarked exclusively for the new system. *Id*. ¶¶ 17-18. The grant funds cannot be used to pay operation or maintenance costs, or costs associated with the interim filtration system. Nilson Decl. ¶¶ 5-7 [document no. 833]; Suppl. Perry Decl. ¶¶ 4-8 [document 866]; Suppl. Muniz Decl. ¶¶ 3, 6-12 [document no. 865].

To sum up, there is a small, badly deteriorated water system with sixty connections that

Case No. C 97-20099 JF (HRL)
ORDER (1) GRANTING THE RECEIVER'S APPLICATION TO RETAIN CERTAIN FUNDS ETC.
(JFLC2)

must be served until the new system comes online. Operational, maintenance and other expenses substantially exceed revenues. The Receiver has no money to pay these expenses, which must be paid in order to ensure that the ratepayers are served adequately. The ratepayers, who have been subjected to significant inconvenience and indignity throughout this decade-long lawsuit, must and shall be served adequately. Defendants oppose any suggestion that they contribute financially to solving this problem. The County has contributed, financially and otherwise, to the problem's long-term solution, but wants to be reimbursed for at least a portion of its financial contribution. It is this infelicitous set of circumstances that the Court confronts as it attempts to determine how to proceed.

## II. RECEIVER'S REQUEST TO RETAIN $100,000

The Receiver has filed a request to retain $100,000 of the approximately $151,000 in remaining sale proceeds, the retained funds to be used for the operational and maintenance expenses of the San Jerardo Water System. Subsequent to the Receiver's filing of his request, the Court has authorized the Receiver to retain a total of $9,000 from the original $151,000 to cover basic operational expenses.[4] That leaves $142,000 in remaining sale proceeds.

The County of Monterey has requested that the Court retain *all* of the remaining sale proceeds, contending that whatever monies are not allocated to operational and maintenance expenses should be remitted to the County in partial repayment for the funds the County has advanced in connection with the interim filtration system.

Defendants assert that it would be grossly unfair to permit the Receiver to retain any of the sale proceeds, and request that all of those proceeds be turned over to Defendants immediately.

The United States does not take a position in this particular dispute.

**A.     Grant Funds**

Defendants argue that the Receiver and/or the County can obtain grant funds to pay for

---

[4] The Court authorized the retention of $4,000 at the hearing on the Receiver's motion, *see* Hrg. Trans. p. 40 [document no. 843]; and authorized retention of an additional $5,000 in its Order dated 1/15/09 [document no. 878].

4

the expenses discussed above. The availability of grant funding has been a source of spirited disagreement between Defendants and the County. Defendants have taken the position that millions of dollars in grant funding have been or may be obtained, and that this money should be used to pay all expenses associated with the San Jerardo system. The County repeatedly has asserted that, although approximately $3.7 million dollars in grant funding is available, that funding may be used *only* to pay for the new system, and may not be used to pay operational or maintenance expenses or expenses associated with the interim filtration system. The Court requested and received substantial supplemental evidentiary submissions with respect to this issue. After reviewing these voluminous submissions, the Court is satisfied that the County's representations are accurate – that is, that grant funds are available *only* to pay for the new system, and that there are no grant funds available to pay for operational, maintenance, or interim filtration expenses. Nilson Decl. ¶¶ 5-7 [document no. 833]; Suppl. Perry Decl. ¶¶ 4-8 [document 866]; Suppl. Muniz Decl. ¶¶ 3, 6-12 [document no. 865]. It appears that the County has done an impressive job of acquiring grant funds for the new system, as it has obtained commitments for $ 3.7 million in grant funding. However, while the Court has every expectation that this funding and the resulting new system will solve the long-term problems facing San Jerardo, the grant funding clearly will not aid the Court in solving the system's immediate problems.

**B      Rate Increase**

Defendants assert that the Receiver simply should apply for a rate increase to cover any shortfall in operational or maintenance expenses. Assuming that the California Public Utilities Commission ("CPUC") would approve increases sufficient to cover such expenses, it appears that each of the sixty ratepayers connected to the San Jerardo system would have to pay $30-$35 per month to cover the operational expenses shortfall, and an additional $45 per month to cover the maintenance expenses shortfall. Rec's Reply at 2 [document no. 830]. Requiring the ratepayers to shoulder the entire financial burden facing San Jerardo in the short term simply is not an option. The ratepayers did not create or contribute to the present situation. However, given the fact that the ratepayers are deriving significant benefit from the improvements the

Receiver has made, and will derive benefit from the new system once it is up and running, and given the practical realities of the situation that has arisen, the Court concludes that some reasonable rate increase would be appropriate. The Receiver has indicated that he is willing to apply for a reasonable rate increase, and the Court will direct that he do so. The Court leaves it to the discretion of the Receiver and the CPUC to determine what rate increase, if any, is reasonable under the circumstances.

C.   **County Funds**

Defendants argue that the County ultimately will end up as the owner of the San Jerardo system, and that in light of this fact the County should invest financially in the system. Defendants argue that it would be unfair to force Defendants to pay for improvements to the system and then permit the County to "get it for a dollar." Hrg. Trans. at 41 [document no. 843]. In response, the County asserts that it has contributed significant funds, as well as significant time and resources, to the San Jerardo Water System. *See* Supp. Perry Decl. ¶¶ 12-14 [document no. 837]; Muniz Decl. ¶ 8 [document no. 847]. As the Court noted at the hearing on May 29, 2008, the County is the *de facto* buyer of the system. Hrg. Trans. at 41 [document no. 843]. However, the County argues persuasively that to the extent that expenditures were and are necessitated by Defendants' neglect of the system, Defendant should have to pay to fix what it broke.

D.   **Sale Proceeds**

After examining the record as a whole, the Court concludes that the majority of the expenses at issue are attributable to Defendants' past failure to maintain the San Jerardo Water System properly. Defendants point out that the Receiver has been operating the system for the past six years, and argue that any deterioration in the system thus is attributable to him. However, the record shows that after the Receiver was appointed, he and Defendants entered into an arrangement whereby Defendants continued managing the day to day operations of the system. That arrangement lasted until fairly recently, when the Receiver discovered the seriousness of the state of disrepair of the San Jerardo Water System. Accordingly, the Court concludes that it is appropriate to require Defendants to pay a significant portion of the expenses at issue. With

respect to the ongoing receivership expenses, as distinct from expenses necessary to address past neglect, the Court notes that the receivership would not have been necessary but for Defendants' culpable conduct.[5] While no one – least of all the Court – could have envisioned that the receivership would last this long and involve so many hurdles, at least some of the extended nature of this situation is attributable to Defendants' conduct throughout this process.[6]

Defendants characterize the Receiver's conduct in improving the San Jerardo Water System as "baffling." Def's Opp. at 6 [document no. 827]. Defendants assert that the Receiver simply should redouble his efforts to sell the system, asserting that the buyer will address the system's problems. *Id*. Defendants' suggestion is unrealistic. No one wants the San Jerardo system. The County almost certainly will be the *de facto* buyer of the system, and it has made significant contributions of finances and other resources to it. But the County cannot be expected to take the system with the pre-existing problems described herein without attempting to recover costs incurred to cure the effects of Defendants' negligence. Moreover, the Court finds troubling Defendants' suggestion that the Receiver, aided by the County, should not have taken steps to improve the San Jerardo system. As Defendants are well aware, it was necessary to deliver bottled water to the San Jerardo community until the interim filtration system was in place; it also was necessary to improve the system to bring it into compliance with state and local standards. *See* County's Resp. at 5 [document no. 831].

Defendants argue that the Receiver and the County have chosen to proceed with an unduly expensive and unnecessary plan that involves an interim filtration system followed by

---

[5] Defendants accuse the Receiver of misleading Defendants and the Court by representing that ongoing expenses at San Jerardo would be minimal; Defendants question how, given that representation, the Receiver suddenly claims expenses of the magnitude discussed here. The Receiver has clarified that his prior representation regarding minimal expenses referred to *administrative* expenses, not to operational and maintenance expenses. Rec's Reply at 4 [document no. 830]. Having examined the record on this point the Court concludes that the Receiver did not deliberately mislead Defendants or the Court.

[6] The Court has commented many times on Defendants' lack of cooperation with the Receiver and propensity to litigate even small matters, and need not go into detail about these issues here.

construction of an entirely new system. Defendants claim that the San Jerardo situation could have been resolved long ago by a simple extension from Alco's main line. Defendants state that they should be required to pay only what that extension would have cost, and not for the installation of an unnecessary interim system as well as a new permanent system. The available evidence does not support the "simple" solution Defendants propose. The County engaged in a detailed cost comparison that analyzed the costs of Defendants' proposed solution and the planned new system. *See* Kitaji Decl. ¶¶ 3-8 [document no. 848]. Defendants' proposed solution would require a pipeline of approximately 5.7 miles (30,000 lineal feet). *Id*. at ¶ 8. The planned new system requires a pipeline of approximately 2.18 miles (30,000 lineal feet) from a new primary well. *Id*. ¶ 9. Defendants' proposed solution would cost $4,071,250, while the new system being implemented by the Receiver and the County will cost $2,655.704. *Id*. ¶ 11.[7] Moreover, the San Jerardo system would lose approximately $500,000 in grant funding if the system were connected to Alco's system rather than to the new well presently being installed. Suppl. Sandoval Decl. ¶ 18 [document no. 862].

     Under these circumstances, the Court believes that there is substantial justification for directing the Receiver to retain all of the remaining sale funds. However, the Court acknowledges that factors other than Defendants' conduct have contributed to the present difficulties with the San Jerardo system. There has been a significant breakdown in communication between the Receiver and Defendants. The Receiver has spent a substantial amount of money on the San Jerardo system already. The Court's orders could have been clearer with respect to long-term issues such as those it confronts now. Moreover, with respect to County funds, it seems inevitable that the County in fact will own the system at the end of the day. Weighing all of these factors, the Court is not willing to strip Defendants of all remaining sale proceeds at this time. Accordingly, the Court will grant the Receiver's motion for leave to retain $100,000 of the remaining $142,000, those monies to be used for operational and maintenance expenses, and will direct the Receiver to disburse $42,000 to Defendants.

---

[7] These figures are confirmed by the Declaration of Dave Foote, a civil engineer that provides professional services to the County of Monterey. *See* Foote Decl. ¶¶ 4-12.

### III. RECEIVER'S STATUS REPORTS

Having reviewed the Receiver's status reports for the period November 1, 2007 through April 30, 2008, and the periods spanning November 1, 2006 through October 31, 2007, the Court is satisfied that the fees and expenses set forth therein were reasonably incurred. With respect to the fees and expenses previously paid in part with respect to the periods spanning November 1, 2006 through October 31, 2007, the Court concludes that the fees and expenses are justified in whole and directs Defendants to pay the outstanding amounts due. Defendants shall pay the outstanding fees and expenses due for the periods November 1, 2007 through April 30, 2008, and the periods spanning November 1, 2006 through October 31, 2007, within thirty days of the date of this Order.

### IV. RECEIVER'S APPLICATION TO RETAIN $5,000

The Receiver's ex parte application for leave to retain an additional $5,000 of the sale proceeds is moot given the Court's ruling on the Receiver's motion for leave to retain $100,000 of the sale proceeds.

### V. ORDER

(1) The Receiver's motion for leave to retain $100,000 from the remaining sale proceeds is GRANTED as set forth above. The Receiver shall remit to Defendants the remaining $42,000 in sale proceeds within thirty days of the date of this Order;

(2) The Receiver shall apply to the CPUC for a reasonable rate increase to help defray the operational and maintenance expenses of the San Jerardo Water System within thirty days of the date of this Order;

(3) Defendants shall pay the outstanding fees and expenses set forth in the Receiver's status reports addressed herein within thirty days of the date of this Order; and

(4) The Receiver's latest ex parte application for leave to retain an additional $5,000 of the sale proceeds is DENIED AS MOOT.

DATED: 3/27/09

_____
JEREMY FOGEL
United States District Judge

Case No. C 97-20099 JF (HRL)
ORDER (1) GRANTING THE RECEIVER'S APPLICATION TO RETAIN CERTAIN FUNDS ETC.
(JFLC2)

1  This Order was served on the following persons:

2

3

4  County of Monterey     perrym@co.monterey.ca.us

5  David Patrick Nemecek , Jr    dnemecek@manatt.com, mchavez@manatt.com

6  Diana Donabedian     ddonabedian@luce.com

7  Frank G. Tiesen     tiesenf@co.monterey.ca.us, ontiveross@co.monterey.ca.us

8  J. Michael Hogan     hoganm@co.monterey.ca.us

9  Joe Alfred Izen , Jr    joeizen@joeizen.com, joeslowgo@hotmail.com

10  Jonathan Mark Schwartz     jms01@i.frys.com

11  Kevin T. Haroff     kharoff@ssd.com, sdavid@ssd.com

12  Lenard Garsen Weiss     lweiss@steefel.com, ycano@steefel.com

13  Lori Jonas     lori.jonas@usdoj.gov

14  Marc Peter Fairman     Mfairman@pacbell.net

15  Mary Grace Perry     perrym@co.monterey.ca.us, andradar@co.monterey.ca.us, coatsir@co.monterey.ca.us

16

17  Paul Daniel Gullion     pauldgullion@aol.com, ndgullion@aol.com

   Stephen Gary Varga     Vargalaw@mbay.net, Vargalaw@SBCGlobal.net
18
   Steven O'Rourke     Steve.ORourke@usdoj.gov
19
   Vanessa W. Vallarta     vanessav@ci.salinas.ca.us, julian@ci.salinas.ca.us
20
   City of Salinas
21  Office of the City Attorney
   200 Lincoln Avenue
22  Salinas, CA 93901

23  Charles O'Connor
   U.S. Attorney's Office
24  450 Golden Gate Avenue
   P.O. Box 36055
25  San Francisco, CA 94102

26  Christopher Alan Callihan
   Office of the City Attorney
27  200 Lincoln Ave
   Salinas, CA 93901-2639
28

10

Case No. C 97-20099 JF (HRL)
ORDER (1) GRANTING THE RECEIVER'S APPLICATION TO RETAIN CERTAIN FUNDS ETC.
(JFLC2)

1  John David Rothman
   United States Environmental
2  Protection Agency
   Region IX
3  75 Hawthorne Street
   San Francisco, CA 94105
4
   John W. Richardson
5  5161 Soquel Dr.
   Suite F
6  Soquel, CA 95073

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

Case No. C 97-20099 JF (HRL)
ORDER (1) GRANTING THE RECEIVER'S APPLICATION TO RETAIN CERTAIN FUNDS ETC.
(JFLC2)